OWENS v. PEPSI COLA BOTTLING CO.

[95 N.C. App. 47 (1989)]

MICHAEL OWENS, D/B/A OWENS EXPRESS v. PEPSI COLA BOTTLING COM-
PANY OF HICKORY, N. C., INC.

No. 8825SC590

(Filed 15 August 1989)

### 1. Unfair Competition § 1 — Soft Drink Interbrand Competition Act — inapplicability to plaintiff's claims

The Soft Drink Interbrand Competition Act was inap-
plicable to plaintiff's action where plaintiff did not assert a
challenge to defendant's right to enter into licensing agreements
which restricted licensees' commercial activity to a specific
area, but its complaint instead raised allegations concerning
tortious contractual interference, fraud, price fixing and unfair
trade practices arising out of factual allegations which did
not pertain to the matters covered by the Act.

### 2. Contracts § 33 — tortious interference with contracts — sale of Pepsi products — failure to allege contracts with customers

Plaintiff could not maintain a claim of tortious interference
with his contracts for the sale of Pepsi products where plain-
tiff's forecast of evidence showed that defendant knew of plain-
tiff's arrangements with his customers and defendant allegedly
interfered with those arrangements thereby injuring plaintiff,
but there was no showing of a contract with these customers
such that plaintiff would have had any contractual rights against
the customers.

### 3. Fraud § 12 — distribution of Pepsi products — representations made by supplier — no showing of fraud

The trial court did not err in dismissing plaintiff's fraudulent
misrepresentations claim where plaintiff alleged that he was
told by defendant supplier's representatives that he would
be held to a 100 case shipment inventory, and he was "led
to believe" and was "under the impression" that the same
limitation was being imposed throughout defendant's territory,
but plaintiff's forecast of evidence failed to show that he was
specifically told that similar limits were being imposed
throughout the territory or that he was fraudulently led to
believe that to be the case.

4. **Unfair Competition § 1— sale of Pepsi products—price fixing alleged—existence of question of fact**

Plaintiff's evidence sufficiently established a genuine question of fact regarding his allegations of price fixing in violation of N.C.G.S. § 75-5(b)(3) where plaintiff's evidence tended to show that defendant undertook to injure plaintiff's business by imposing stringent restrictions on plaintiff's Pepsi inventory and by limiting the types of customers with whom plaintiff could do business; defendant threatened to discontinue completely plaintiff's supply if he disobeyed its directive; defendant made threats to some of plaintiff's customers and forbade them to buy Pepsi products from plaintiff; and defendant demanded that plaintiff raise the price of its drinks. There was no merit to defendant's claim that even if it had made demands that plaintiff raise the price of its drinks, this had no effect on plaintiff's business because plaintiff refused to comply.

5. **Unfair Competition § 1— sale of Pepsi products to distributor— unfair and deceptive trade practices alleged—question of fact raised**

Evidence was sufficient to raise a question of fact as to whether defendant's conduct was violative of N.C.G.S. § 75-1.1 where defendant was alleged to have attempted to control plaintiff's productivity by limiting his inventory and his customers; defendant made demands on plaintiff to raise his prices; and defendant sought to control who plaintiff's customers were.

APPEAL by plaintiff from *Lamm (Charles C., Jr.), Judge*. Judgment entered 25 February 1988 in Superior Court, CALDWELL County. Heard in the Court of Appeals 12 December 1988.

*Tuggle Duggins Meschan & Elrod, P.A., by Joseph F. McNulty, Jr. and William R. Sage, for plaintiff-appellant.*

*Petree Stockton & Robinson, by George L. Little, Jr. and J. David Mayberry, for defendant-appellee.*

ORR, Judge.

Plaintiff is the owner of Owens Express, a convenience-type store which is located in Granite Falls, North Carolina. Among

OWENS v. PEPSI COLA BOTTLING CO.

[95 N.C. App. 47 (1989)]

other things, plaintiff sells Pepsi-Cola (Pepsi) brand soft drinks which he purchases from Pepsi-Cola Bottling Company of Hickory, North Carolina (Hickory Pepsi), the defendant. Hickory Pepsi is the exclusive bottler, distributor and seller of Pepsi products in several northwestern North Carolina counties including plaintiff's county.

Plaintiff's complaint alleges that in April of 1986 he was induced and did purchase large quantities of Pepsi products at reduced prices from defendant through one of defendant's promotional campaigns. Plaintiff stored those products in his store and later in three of his warehouses. In addition to selling these products to customers who visited Owens Express, plaintiff sold Pepsi products, at lower prices than defendant, to several industrial and institutional customers in the Granite Falls area.

On 2 April 1987, defendant's representative visited plaintiff's store and allegedly "demanded" that plaintiff increase his retail price on his Pepsi products, and that he limit the number of cases which he sold to his customers. Plaintiff's complaint further alleges that he was ordered to discontinue his practice of selling Pepsi products to industrial and institutional customers.

After learning that a new promotional campaign was underway and that no one had asked him to participate, plaintiff had his lawyer contact defendant and defendant then agreed to sell plaintiff Pepsi products under certain limited conditions. Plaintiff was instructed to limit his sales to 10 cases of canned drinks per customer; plaintiff was told to stop selling the products to schools and factories; he was permitted to store the products in his store only; and he was limited to a 200 case per week delivery of two-liter Pepsis for his store. At that time, plaintiff told defendant that the new limit did not adequately meet his retail needs.

Plaintiff was informed by letter dated 17 July 1987 that defendant was concerned about the quality of the Pepsi products which plaintiff was accused of "stockpil[ing]" in his warehouses. Plaintiff was told that if he did not discontinue this practice he would receive no further shipments from defendant.

Thereafter, on 10 August 1987, plaintiff filed this action alleging the facts set forth above and alleging four causes of action: (1) unfair and unlawful trade practices, (2) fraudulent misrepresentations, (3) tortious interference with contracts, and (4) price fixing.

OWENS v. PEPSI COLA BOTTLING CO.

[95 N.C. App. 47 (1989)]

The material portions of defendant's answer admitted that it only offered plaintiff the 1987 promotional after being contacted by plaintiff's attorney because plaintiff had previously stated that he would not comply with the "terms of defendant's program." Defendant also admitted that it had tried to curtail plaintiff's alleged "wholesaling" activities. Defendant further admitted limiting plaintiff's deliveries in order to guard against transshipping (the purchase of Pepsi products in one territory for resale in another). Defendant denied the allegations relating to price fixing and interfering with the contracts of plaintiff. Finally, defendant's answer moved to dismiss plaintiff's second cause of action and claimed that its actions were lawful under the North Carolina and United States Constitutions.

On 22 February 1988, the trial court heard arguments regarding defendant's summary judgment motion. The court filed its order granting the motion as to each cause of action on 25 February 1988. At that time, the court also filed its order denying plaintiff's motion requesting the production of additional documents and his request for sanctions. From these orders, plaintiff appeals.

I.

[1]    The first issue which we shall address is whether the Soft Drink Interbrand Competition Act, 15 U.S.C.A. sections 3501-3503 (1982), governs plaintiff's claims which were brought under North Carolina General Statute Chapter 75 (which prohibits unfair and deceptive trade practices).

Plaintiff alleges that defendant engaged in unfair and unlawful trade practices, that it fraudulently misrepresented that it was limiting the supplies of all of its retail accounts, that defendant tortiously interfered with plaintiff's contracts, and that defendant attempted to fix prices at an artificially high level by demanding that plaintiff raise its prices beyond those of its own. Plaintiff claims that these activities violate Chapter 75.

Defendant contends that its conduct is lawful as determined by the Soft Drink Interbrand Competition Act (the Act), 15 U.S.C.A. sections 3501-3503, which preempts state law in the area of contracts which restrain competition within the soft drink industry. Defendant further argues that its conduct does not violate North Carolina General Statute Chapter 75.

OWENS v. PEPSI COLA BOTTLING CO.

[95 N.C. App. 47 (1989)]

According to Congress, the Soft Drink Act was passed in order to clarify the confusion regarding the application of antitrust laws to territorial restrictions which were contained in many soft drink manufacturing, distribution and sales licenses. 1980 U.S. Code Cong. Admin. News p. 2373. Additionally, the Act was intended to "halt trends that might otherwise lead to the demise of small bottling firms and the disappearance of the refillable bottle." *Id.* at 2374. Section 3501 states that:

> Nothing contained in any antitrust law shall render unlawful the inclusion and enforcement in any trademark licensing contract or agreement, pursuant to which the licensee engages in the manufacture[,] . . . distribution, and sale of a trademarked soft drink product, of provisions granting the licensee the sole and exclusive right to manufacture, distribute, and sell such product in a defined geographic area or limiting the licensee, directly or indirectly, to the manufacture, distribution, and sale of such product only for ultimate resale to consumers within a defined geographic area. . . .

According to *O'Neill v. Coca-Cola Co.*, 669 F.Supp. 217 (N.D. Ill. 1987), "the purpose of Section 3501 is to exempt from the antitrust laws agreements which essentially forbid transshipping [as previously defined] of soft drink products by resellers." *Id.* at 225. Consequently, this Act would clearly apply to any claims where a plaintiff asserts a challenge against a licensor's territorial restrictions on its licensee. Likewise, it would be applicable to claims challenging a licensor's authority to limit a licensee's sale of soft drink products for ultimate resale within geographic areas.

However, in cases such as the one at bar, where the plaintiff is *not* asserting a challenge to defendant's right to enter into licensing agreements which restrict licensees' commercial activity to a specific area, the Act is inapplicable. Plaintiff's complaint raises allegations concerning tortious contractual interference, fraud, price fixing and unfair and unlawful trade practices arising out of factual allegations that do not pertain to the matters covered by the Act. Therefore, since this Act does not apply, there is no preemption, express or otherwise, of North Carolina authority to apply its laws to the case *sub judice*.

OWENS v. PEPSI COLA BOTTLING CO.

[95 N.C. App. 47 (1989)]

II.

We next turn to the issue of whether the court erred in granting summary judgment in favor of defendant. G.S. 1A-1, Rule 56(c) states that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

The procedure involved in this motion is designed to give a forecast of the proof which the parties intend to offer on behalf of their claims and defenses in order to determine whether a jury trial is necessary. This is done by considering evidence beyond the mere pleadings when determining whether a genuine issue of material fact actually exists. *See Loy v. Lorm Corp.*, 52 N.C. App. 428, 278 S.E.2d 897 (1981); *Singleton v. Stewart*, 280 N.C. 460, 186 S.E.2d 400 (1972). "In a summary judgment motion, all facts must be viewed in the light most favorable to the non-moving party." *L. C. Williams Oil Co., Inc. v. Exxon Corp.*, 625 F.Supp. 477, 480 (M.D.N.C. 1985).

A.

[2] Turning first to plaintiff's claim of tortious interference with his contracts, the fourth cause of action in his complaint, our courts will recognize such causes of action when the following elements are shown: (1) the existence of a valid contract between plaintiff and a third party, conferring upon plaintiff a contractual right against that third party, (2) knowledge of that contract by defendant, (3) intentional inducement by defendant for the third party not to perform the contract with plaintiff, (4) done without justification, and (5) causing damages to plaintiff. *Childress v. Abeles*, 240 N.C. 667, 674, 84 S.E.2d 176, 181-82 (1954).

Plaintiff's evidentiary forecast as to this issue includes an affidavit by Brent Helton, a principal at a local school to which plaintiff sold canned Pepsi products over the past several years. Helton stated that he had previously purchased more than 100 cases of Pepsi products from plaintiff until plaintiff's supplies were depleted and until he was contacted by an agent of defendant's. This agent told Helton that he could no longer buy Pepsi products from plaintiff. He was told that he must instead buy them from defendant at the "truck price," which was higher than plaintiff's

prices. Plaintiff's deposition testimony stated that on "[n]umerous occasions" one customer in particular had "begged" him for Pepsi products. Plaintiff further testified that he was unable to completely meet the needs of his customers; consequently, his business suffered. Notably absent from plaintiff's forecast are statements alleging the existence of contracts with any of the persons with whom plaintiff did business.

While it is true that defendant knew of plaintiff's arrangements with his customers and defendant allegedly interfered with those arrangements thereby injuring plaintiff, there was no contract with these customers such that plaintiff would have had any contractual rights against the customers. In the absence of any showing of a valid contract with his customers, plaintiff cannot maintain an action on this ground. Accordingly, we affirm the trial court's judgment on this issue.

## B.

[3]   We turn to plaintiff's claim that the trial court erred in dismissing plaintiff's fraudulent misrepresentations claim which is the third cause of action in his complaint. The essential elements of actionable fraud are: "(1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Shreve v. Combs*, 54 N.C. App. 18, 21, 282 S.E.2d 568, 571 (1981). Furthermore, the material misrepresentation must be definite and specific, and it must be of a past or existing fact. *Rosenthal v. Perkins*, 42 N.C. App. 449, 451, 257 S.E.2d 63, 65 (1979).

In the case *sub judice*, plaintiff alleged that he was told by defendant's representatives that he would be held to a 100 case shipment inventory. He stated further that he was "led to believe" and that he was "under the impression" that the same limitation was being imposed throughout defendant's territory. When asked whether any of defendant's agents ever specifically assured him that defendant's other customers were being handled similarly, plaintiff's response was "I don't think he ever assured me that it was." Deposition testimony from plaintiff's father was ambiguous on the question of whether defendant ever stated that a similar limit was being imposed on its other customers.

On the basis of the above facts, plaintiff's evidence was not sufficient to withstand a summary judgment motion. While plaintiff alleged that he was falsely told that all of defendant's customers were being treated similarly, his evidentiary forecast does not support such an allegation. There was no evidence in the record which indicated that plaintiff was specifically told that similar limits were being imposed throughout the territory or that he was fraudulently led to believe that to be the case. Accordingly, the trial court's grant of summary judgment on this claim is affirmed.

## C.

[4] We shall next address the issue of whether the lower court erred in granting defendant's summary judgment motion to plaintiff's price fixing claim, the second cause of action in his complaint. G.S. 75-5(b)(3) provides:

> (b) In addition to other acts declared unlawful by this Chapter, it is unlawful for any person directly or indirectly to do, or to have any contract express or knowingly implied to do, any of the following acts:
>
> (3) To willfully destroy or injure, or undertake to destroy or injure, the business of any competitor or business rival in this State with the purpose of attempting to fix the price of any goods when the competition is removed.

Plaintiff's evidentiary forecast for this issue contains deposition testimony from plaintiff that he was told to raise his prices on two-liter Pepsis. Also, plaintiff's evidence contains an affidavit of Michael Hawks, a former employee of defendant's. His affidavit stated that on 25 November 1985, he was told by one of defendant's sales managers to visit Owens Express store and to tell its owner, Michael Owens, to "raise his retail price on Pepsi-Cola in two-liter bottles." Hawks stated that Owens Express was selling two-liter Pepsi products at $.79 and that other stores had been complaining about the low price at which plaintiff's store was selling its two-liter Pepsis. Hawks further stated that he and another of defendant's employees went to plaintiff's store and told plaintiff and his father that Owens Express would have to raise its retail prices. Mr. Hawks stated that he was instructed to delete from his weekly activity report any mention of this particular visit to Owens Express.

Defendant claims that even if it had made demands that plaintiff raise the price of its drinks, this had no effect on plaintiff's business because plaintiff refused to comply. Additionally, defendant claims that it was justified in intervening in the sales transaction between plaintiff and other retailers.

Despite defendant's claims, G.S. 75-5(b)(3) makes it unlawful for an entity to undertake to destroy or injure another's business for the purpose of *attempting* to fix prices. (Emphasis added.) The evidence for purpose of a summary judgment motion adequately demonstrates that defendant undertook to injure plaintiff's business by imposing stringent restrictions on plaintiff's Pepsi inventory, and by limiting the types of customers with whom plaintiff could do business. Defendant threatened to completely discontinue plaintiff's supply if he disobeyed its directive. Likewise, defendant made threats to some of plaintiff's customers and forbade them to buy Pepsi products from plaintiff. We hold that plaintiff's evidence, taken in the light most favorable to him, does sufficiently establish a genuine question of fact regarding his allegations of price fixing in violation of G.S. 75-5(b)(3). *See Baynard v. Service Distributing Co.*, 78 N.C. App. 796, 797, 338 S.E.2d 622, 623 (1986). Moreover, that defendant's purpose was not achieved is inconsequential because the statute punishes undertakings which *attempt* to fix prices.

D.

[5] Finally, we turn to the question of whether the trial court erred in dismissing plaintiff's first cause of action which alleges unfair and deceptive trade practices. "A precise definition of unfair or deceptive acts is not possible, but whether a particular act is unfair or deceptive depends on the facts surrounding the transaction and the impact on the market place." *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 685, 340 S.E.2d 755, 760, *cert. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986).

In the case before us, defendant is alleged to have attempted to control plaintiff's productivity by limiting his inventory and his customers. Defendant made demands on plaintiff to raise his prices. It sought to control who plaintiff's customers were. This conduct is sufficient to raise a question of fact as to defendant's conduct. Consequently, we find that the trial court erred in granting summary judgment on this claim. Furthermore, "any act which is a violation of [sec.] 75-5(b)(3) would also be considered to be a violation of [sec.] 75-1.1, since [sec.] 75-5(b)(3) simply sets out specific conduct

which is considered to be illegal and an unfair competitive act." *American Rockwool, Inc. v. Owens-Corning Fiberglas*, 640 F.Supp. 1411, 1435 (E.D.N.C. 1986). Therefore, since we concluded that plaintiff's price fixing allegations raise a question of fact, we find that such allegation, if proven, would constitute an unfair and deceptive trade practice as would the allegations pertaining to the defendant's effort to restrict plaintiff's business.

Based upon the foregoing, we remand to the trial court plaintiff's price fixing and unfair and deceptive trade practices claim. We affirm the court's entry of summary judgment in plaintiff's tortious interference with contracts and fraud claims.

Reversed and remanded in part, affirmed in part.

Judge ARNOLD concurs.

Chief Judge HEDRICK concurs in the result.