JOYCE BOWLIN, Plaintiff-Appellant v. DUKE UNIVERSITY, PRIVATE
DIAGNOSTIC CLINIC, and ROY B. JONES, Defendant-Appellee

No. 9110SC1195

(Filed 1 December 1992)

1. **Pleadings § 2.1 (NCI3d)— applicability of rule of law or
   evidence—pled as a separate claim for relief**

   Although it appears that N.C.G.S. § 1A-1, Rules 12(b)(6)
   and 8(a) suggest that pleadings should be limited to those
   facts or descriptions of transactions, occurrences, or series
   of transactions or occurrences intended to be proved, plaintiff's
   *res ipsa loquitur* claim was considered on its merits.

   **Am Jur 2d, Negligence §§ 1983-2006, 2015; Pleadings
   § 104.**

   **Modern trends as to pleading a particular cause of injury
   or act of negligence as waiving or barring the right to rely
   on res ipsa loquitur. 2 ALR3d 1335.**

2. **Physicians, Surgeons, and Allied Professions § 16 (NCI3d)—
   res ipsa loquitur—inappropriate to medical malpractice**

   The trial court did not err by dismissing plaintiff's *res
   ipsa loquitur* claim in a medical malpractice action where there
   was conflicting expert testimony as to the cause of plaintiff's
   injury and it could not be found that the injury was one that
   ordinarily would not occur except for some negligent act or
   omission. Furthermore, *res ipsa loquitur* is based upon com-
   mon knowledge and experience generally known to laymen
   and the Court of Appeals has consistently reaffirmed that
   *res ipsa loquitur* is inappropriate in the usual medical malprac-
   tice case, where the question of injury and the facts in evidence
   are peculiarly in the province of expert opinion.

   **Am Jur 2d, Negligence §§ 2215, 2219, 2238; Physicians,
   Surgeons, and Other Healers §§ 333, 335, 339.**

   **Physicians and surgeons: res ipsa loquitur, or presumption
   or inference of negligence, in malpractice cases. 82 ALR2d
   1262.**

**3. Physicians, Surgeons, and Allied Professions § 17.1 (NCI3d) — malpractice — informed consent — use of medical student in surgery**

The trial court did not err in a medical malpractice action by granting summary judgment for defendants on the informed consent claim where plaintiff contended that defendant Dr. Jones should have informed her of any health care providers who would assist in the bone marrow harvest procedure and their levels of expertise. Defendants' forecast of evidence included expert testimony that the use of medical students in providing health care is standard practice in teaching hospitals and plaintiff acknowledged that she signed a consent form which included a statement in which she agreed that medical students could assist in providing her care, both specifically and by acknowledging the fact that Duke University Medical Center is a teaching institution. There is no statutory or common law duty for an attending physician to inform a patient of the particular qualifications of individuals who will be assisting.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 186-190, 194, 195.**

**4. Physicians, Surgeons, and Allied Professions § 16.1 (NCI3d) — constructive fraud by physician — use of medical student in surgery — summary judgment for defendants**

The evidence was insufficient in a medical malpractice action to support plaintiff's claim for constructive fraud based on her physician's failure to reveal the status of an unlicensed medical student assisting in surgery. While plaintiff established a relationship of trust and confidence between defendant Dr. Jones and herself, there was no affirmative duty to inform the plaintiff of the medical student's status and it is common practice for medical students at teaching hospitals to assist in medical procedures.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 190, 366.**

Appeal by plaintiff from judgment entered 17 July 1991 in Wake County Superior Court by Judge Knox V. Jenkins, Jr. Heard in the Court of Appeals 9 November 1992.

**BOWLIN v. DUKE UNIVERSITY**

[108 N.C. App. 145 (1992)]

Plaintiff instituted this medical malpractice action seeking to recover damages for personal injuries she allegedly sustained during a bone marrow harvest procedure at Duke University Medical Center on 6 October 1986. The forecast of evidence before the trial court reveals the following events and circumstances:

Plaintiff was diagnosed as seriously ill with breast cancer in the spring of 1986. She had a radical mastectomy and then underwent chemotherapy, prior to coming to Duke Medical Center. Plaintiff's oncologist found she was at high risk for reoccurrence and referred her to Duke for a bone marrow harvest procedure. This procedure involves the extraction and preservation of bone marrow for later use by the patient if the cancer reoccurs.

Plaintiff's bone marrow procedure was performed by defendant Dr. Roy B. Jones (hereinafter Dr. Jones), a partner at defendant Private Diagnostic Clinic (PDC) and assistant professor at Duke University Medical Center. Zachary Shpall, at that time a fourth-year medical student and enrolled in a subinternship in hematology/oncology, assisted with the procedure and actually performed the marrow extractions on one side of plaintiff's hip. Defendant Dr. Jones did not specifically inform plaintiff that a fourth-year medical student would be participating in her medical procedure.

Following the procedure, plaintiff immediately noticed numbness and severe pain in her right buttock and posterior thigh. The medical records did not indicate that plaintiff complained about her discomfort in the immediate post-operative period. After plaintiff complained of severe pain to Dr. Jones, he arranged for plaintiff to see a neurologist for an evaluation of her condition.

There was a difference of medical opinion as to plaintiff's condition and its exact cause. Plaintiff's experts diagnosed her condition as partial neuropathy of the sciatic nerve caused by needle penetration during the harvest procedure. Defendants' experts found that plaintiff did not suffer any injury to her sciatic nerve as a result of the bone marrow harvest procedure. Instead, they determined plaintiff's injury was multi-factorial in cause, stemming from several pre-existing conditions.

Defendants moved for summary judgment. After a three-day hearing on the motions and after reviewing the forecast of evidence with respect to each of plaintiff's claims, the trial court granted defendants' motions as to all of plaintiff's claims except

her ordinary negligence claims. Plaintiff appeals from the trial court's order allowing partial summary judgment.

*Tharrington, Smith & Hargrove, by Marcus W. Trathen; and Elizabeth F. Kuniholm, for plaintiff-appellant.*

*Newsom, Graham, Hedrick, Bryson & Kennon, by E. C. Bryson, Jr. and Mark E. Anderson, for defendant-appellee Duke University.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by William H. Moss and Samuel G. Thompson, for defendant-appellees Private Diagnostic Clinic and Roy B. Jones.*

WELLS, Judge.

We note initially that the summary judgment below did not resolve all claims between all parties. Partial summary judgment is interlocutory and subject to dismissal. However, following our Supreme Court's reasoning and holding in *Oestreicher v. Stores,* 290 N.C. 118, 225 S.E.2d 797 (1976) and its progeny, we conclude that plaintiff had a substantial right to have all her claims tried at the same time before the same judge and jury. We therefore will determine plaintiff's appeal on its merits.

Plaintiff sets forth four assignments of error for our review. First, plaintiff argues that the trial court erred in dismissing her first claim, in which she asserted that the doctrine of *res ipsa loquitur* should apply. Second, plaintiff contends partial summary judgment was improper because defendant Dr. Jones did not obtain her informed consent to the procedure. Third, plaintiff argues partial summary judgment was improper because defendant Dr. Jones' alleged misrepresentation of the status of Zachary Shpall, a fourth-year medical student, amounted to constructive fraud. Finally, plaintiff argues that the trial court erred in granting partial summary judgment because there was sufficient evidence of intentional misrepresentation on the part of defendant Dr. Jones. We find plaintiff's final assignment of error to be without merit, and we therefore do not address it.

## "RES IPSA" CLAIM

[1]   We initially question whether it is acceptable practice under our Rules of Civil Procedure to "plead" the applicability of a rule of law or evidence as a separate claim for relief. Although in re-

**BOWLIN v. DUKE UNIVERSITY**

[108 N.C. App. 145 (1992)]

pealing N.C. Gen. Stat. § 1-122 requiring a complaint to state "the facts constituting a cause of action" the legislature has adopted the more liberal concept of "notice pleading," the clear import of Rule 8(a), is to retain the idea of factual pleading; that is, to set forth those essential facts required to give adequate "notice" for preparation by the opponent. N.C. Gen. Stat. § 1-122 (repealed 1 January 1970). *See generally Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970) (*citing* an explanation of the New York rules on notice pleading, the source of the North Carolina rules, providing guidance in interpretation of our Rule 8(a) ). Furthermore, in testing the legal sufficiency of pleadings, using the Rule 12(b)(6) motion, well-pleaded material allegations of fact are taken as admitted, but conclusions of law or unwarranted deductions of fact are not admitted. *Id.* Taken together, it appears that Rules 12(b)(6) and 8(a) suggest pleadings should be limited to those facts or descriptions of "transactions, occurrences, or series of transactions or occurrences, intended to be proved." North Carolina Rules of Civil Procedure, Rule 8(a). Nevertheless, we address plaintiff's *res ipsa loquitur* claim on its merits.

[2] *Res ipsa loquitur* is a doctrine addressed to those situations where the facts or circumstances accompanying an injury by their very nature raise a presumption of negligence on the part of defendant. It is applicable when no proof of the cause of an injury is available, the instrument involved in the injury is in the exclusive control of defendant, and the injury is of a type that would not normally occur in the absence of negligence. *Grigg v. Lester*, 102 N.C. App. 332, 401 S.E.2d 657, *cert. denied*, 329 N.C. 788, 408 S.E.2d 520 (1991); *See* Brandis on North Carolina Evidence, 227 (3rd ed. 1988).

In this case, there was conflicting expert testimony as to the cause of plaintiff's injury. We, therefore, cannot find the injury to be one that ordinarily would not occur except for some negligent act or omission. Furthermore, *"res ipsa loquitur* is based upon common knowledge and experience" generally known to laymen. *Grigg, supra.* It is our opinion that injury to the sciatic nerve during a bone marrow harvest procedure is peculiarly the subject of expert opinion, and a layman would have no basis for concluding that defendant was negligent in extracting the marrow. This Court has consistently reaffirmed that *res ipsa loquitur* is inappropriate in the usual medical malpractice case, where the question of injury and the facts in evidence are peculiarly in the province of expert

opinion. *Grigg, supra. See also Elliot v. Owen,* 99 N.C. App. 465, 393 S.E.2d 347 (1990). We therefore affirm the trial court's ruling.

## INFORMED CONSENT CLAIM

[3] Second, plaintiff argues that defendant Dr. Jones did not obtain her informed consent to the bone marrow harvest procedure. Specifically, plaintiff alleged that Dr. Jones misrepresented the status of his assistant, Zachary Shpall, to plaintiff before she underwent the procedure. This misrepresentation, plaintiff asserts, violated N.C. Gen. Stat. § 90-21.13, requiring a physician to obtain consent from the patient "in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities[.]" N.C. Gen. Stat. § 90-21.13(a)(1).

The forecast of evidence presented at trial does not support this contention. We first note that defendants' forecast of evidence included expert testimony that the use of medical students in providing health care is standard practice in teaching hospitals. Second, we note that plaintiff acknowledged that she signed a consent form which included a statement that she agreed medical students could assist in providing her care, both specifically and by acknowledging the fact that Duke University Medical Center is a teaching institution. The pertinent "consent" language in the form plaintiff signed was as follows:

## TEACHING INSTITUTION

I understand that Duke University Medical Center is a teaching institution, and I agree that students training to be physicians, nurses, [and] allied health personnel may assist in providing my care and that my medical records may be used for purposes of research, education, and patient care.

It appears that plaintiff contends defendant Dr. Jones should have informed her of any health care provider who would assist him in the bone marrow harvest procedure and their levels of expertise. There is, however, no statutory or common law duty for an attending surgeon to inform a patient of the particular qualifications of individuals who will be assisting, and the consent given by plaintiff defeats this argument. *See generally Foard v. Jarman,* 326 N.C. 24, 387 S.E.2d 162 (1990). We therefore hold that the trial court's granting summary judgment on the informed consent claim to be proper.

**BOWLIN v. DUKE UNIVERSITY**

[108 N.C. App. 145 (1992)]

## CONSTRUCTIVE FRAUD CLAIM

**[4]** Finally, plaintiff argues that defendant Dr. Jones' failure to reveal Mr. Shpall's status as an unlicensed medical student amounts to constructive fraud. To sustain a cause of action for constructive fraud, plaintiff must allege facts and circumstances (1) which created a relationship of trust and confidence, and (2) which led up to and surrounded a transaction in which defendant allegedly took advantage of his position of trust to injure the plaintiff. *Watts v. Cumberland County Hosp. System*, 317 N.C. 110, 343 S.E.2d 879 (1986). The first prong of the test in *Watts* is easily satisfied if plaintiff alleges defendant Dr. Jones was her attending physician at Duke Medical Center. Our Court has consistently recognized the physician-patient relationship to be a fiduciary one, "imposing upon the physician the duty of good faith and fair dealing." *Id.* See *Black v. Littlejohn*, 312 N.C. 626, 325 S.E.2d 469 (1985).

While plaintiff has established a relationship of trust and confidence between defendant Dr. Jones and herself, we find that she has not alleged facts sufficient to show defendant Dr. Jones breached his fiduciary duty or took advantage of plaintiff's trust to her detriment. Again, there was no affirmative duty to inform the plaintiff of Mr. Shpall's status, and it is common practice for medical students at teaching hospitals to assist in medical procedures. As we have noted, informing the patient of each assistant's level of training or level of expertise is not an affirmative duty we will impose in such cases. Therefore, we find the forecast of evidence presented insufficient to support plaintiff's claim for constructive fraud.

For the reasons stated, we affirm the trial court's order granting partial summary judgment in favor of defendants.

Affirmed.

Judges ARNOLD and LEWIS concur.