O'HENRY LYON, PLAINTIFF v. WILLIS D. MAY, JR., DEFENDANT

No. 918SC1056

(Filed 19 January 1993)

1. **Contracts § 187 (NCI4th)— former lessee's contract for crop loss insurance—interference by landlord—no justification**

    Plaintiff landowner was not justified in interfering with the contract between an insurance company which wrote a policy of crop loss insurance and defendant who rented and farmed plaintiff's land, since plaintiff was not named as loss payee or coinsured; there was no assignment to plaintiff of rights under the policy; the security agreement executed by defendant did not establish an obligation that defendant obtain insurance on the crops; defendant took out insurance on the crops at the insistence of and for the benefit of the Farmer's Home Administration; and to the extent that the insurance proceeds may have exceeded the debt owed to FmHA, plaintiff was still not entitled to make a demand for payment of those proceeds until they fell into the hands of defendant debtor.

    **Am Jur 2d, Insurance § 1737; Interference § 27.**

2. **Contracts § 187 (NCI4th)— crop loss insurance—partial assignment—existence of defendant's contractual right against insurance company—plaintiff's interference**

    There was no merit to plaintiff's contention that defendant did not possess a valid contractual right against an insurance company which wrote a crop loss policy on defendant's crops because defendant assigned the indemnity rights to FmHA

LYON v. MAY

[108 N.C. App. 633 (1993)]

and therefore defendant could not claim plaintiff's interference with the contract, since defendant did not make a complete assignment of the proceeds, but only of the amount required to satisfy defendant's remaining indebtedness to FmHA; and defendant, as named insured, had an enforceable right to force the payment of the insurance proceeds.

**Am Jur 2d, Insurance § 1902; Assignments § 76.**

**3. Process § 19 (NCI3d)— abuse of process—insufficiency of evidence**

Plaintiff was entitled to judgment notwithstanding the verdict on defendant's counterclaim for abuse of process where the record did not reflect any evidence of an ulterior motive on the part of plaintiff in attempting to attach insurance proceeds, but instead showed that plaintiff was attempting to prevent the transfer of money to which plaintiff believed he was entitled, albeit mistakenly.

**Am Jur 2d, Abuse of Process §§ 6, 22.**

**4. Contracts § 183 (NCI4th)— interference with contract—punitive damages—judgment n.o.v. denied**

The trial court did not err in denying plaintiff's motion for judgment notwithstanding the verdict on the issue of punitive damages awarded to defendant where plaintiff intentionally interfered with defendant's contract with his insurance carrier.

**Am Jur 2d, Damages §§ 739, 747; Interference § 61.**

**Punitive damages for interference with contract or business relationship. 44 ALR4th 1078.**

**5. Conversion § 10 (NCI4th)— changing of name on contract— insufficiency of evidence**

The trial court did not err in granting plaintiff's motion for judgment notwithstanding the verdict on defendant's conversion counterclaim where defendant claimed that the act constituting conversion was the changing by plaintiff of the name on a contract with the federal Agricultural Stabilization and Conservation Service, but the evidence presented at trial failed to establish ownership in defendant of the federal funds at the time of the alleged conversion.

**Am Jur 2d, Conversion §§ 75, 80.**

Appeal by plaintiff and defendant from judgment entered 29 May 1991 by Judge Herbert Small in Greene County Superior Court. Heard in the Court of Appeals 18 November 1992.

This appeal arises from an action filed by plaintiff, O'Henry Lyon to recover money allegedly owed by defendant Willis D. May, Jr. on three promissory notes. Defendant May, for several years prior to 1986, cash leased land from plaintiff's parents. In 1985, plaintiff inherited the land and continued to lease it to defendant. Apparently in 1985 no agreement was reached as to rent, so no payments were made by defendant for the use of the land for that year. In 1986, plaintiff and defendant agreed on an amount for the 1985 and 1986 rent, and the first of the three notes between plaintiff and defendant was signed for that amount. This note did not include money intended for financing the 1986 farming year.

Defendant was in need of substantial funds to finance his 1986 crop. He approached the United States Farmer's Home Administration (FmHA) to obtain a loan for 1986. FmHA could not provide sufficient funds to meet defendant's needs, so plaintiff agreed to participate in a FmHA lending program which would allow defendant to farm in 1986.

Through the FmHA program, plaintiff loaned defendant $30,000, and FmHA subordinated its secured liens on defendant's crops to plaintiff's security interest. In conjunction with this loan, defendant signed a $26,000 note and a $4,000 note and signed security agreements for both notes which included the crops grown by defendant on three different farms.

FmHA required defendant to obtain crop loss insurance for crops grown by defendant, and to assign the right to indemnity under the policy to FmHA. The insured crops were included in plaintiff's security agreement with defendant and were subject to the subordination agreement with FmHA. The assignments of indemnity given to FmHA were limited to the extent of defendant's indebtedness to FmHA.

Defendant suffered damage to his crops in 1986 and became entitled to proceeds from the crop loss insurance policy. When plaintiff learned of the crop damage he contacted the insurance agency which placed the crop loss insurance with defendant and demanded to be included in the distribution of proceeds because he held a security interest in the crops. Plaintiff contacted FmHA

and made similar demands on them. Plaintiff went further and contacted the Department of Insurance and questioned the insurance company's solvency which initiated a minor investigation into the insurance company. This investigation led to a letter from the insurance company's attorney to the Department of Insurance informing them that plaintiff was not a party to the policy. The Department informed plaintiff of this. During the time plaintiff was fighting for the proceeds of the insurance policy, defendant was negotiating for new leases. He was unable to obtain financing for the leases due to the nonpayment of proceeds resulting from the dispute initiated by plaintiff.

Plaintiff persisted in his pursuit of the proceeds until finally, on 18 February 1987, the insurance company filed a declaratory judgment action to have the court determine who should receive payment. Defendant's motion for judgment on the pleadings was heard in July 1987 at which time the superior court judge indicated that he was going to rule that FmHA and defendant were entitled to the insurance proceeds, but that he would delay signing the judgment until 24 July 1987.

On 22 July 1987, plaintiff filed the lawsuit leading to this appeal in which he sought payment on the three notes and also filed for attachment of the insurance proceeds. Defendant counterclaimed for intentional interference with a contract, abuse of process, conversion, and sought punitive damages.

FmHA intervened and removed the case to federal court, requesting the attachment be dissolved. On 25 March 1988, the federal court dissolved the attachment pursuant to FmHA's and plaintiff's motions, and ordered the proceeds disbursed to FmHA and defendant. The case was later transferred to Greene County Superior Court where a jury found defendant liable on the notes and found for defendant on all his counterclaims. Plaintiff moved for judgment notwithstanding the verdict on all defendant's counterclaims. The trial judge granted plaintiff's motion on the conversion counterclaim but denied all others. Plaintiff appeals the denial of his motions for judgment notwithstanding the verdict. Defendant appeals the motion for judgment notwithstanding the verdict on his conversion counterclaim.

*Hunton & Williams, by Michael L. Unti, for plaintiff appellant.*

*Ward and Smith, P.A., by John M. Martin, for plaintiff appellant-appellee.*

*Hunton & Williams, by Michael L. Unti and James L. Hunt, for plaintiff appellee.*

*Lonnie Carraway for defendant appellant-appellee.*

*Law Offices of Roland C. Braswell, by Roland C. Braswell, for defendant appellee.*

ARNOLD, Chief Judge.

In plaintiff's first assignment of error, he claims the trial court erred in denying his motion for judgment notwithstanding the verdict on defendant's counterclaim for intentional interference with a contract. The elements of this tort are: (1) a valid contract between plaintiff and a third party that confers upon plaintiff a contractual right against the third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of a third party not to perform; (4) defendant acting without justification; and (5) resulting actual damage to plaintiff. *United Lab., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (citation omitted). Plaintiff argues that defendant failed to establish two of the elements, and he was therefore entitled to judgment notwithstanding the verdict.

[1] First, plaintiff declares that he was justified in interfering with the contract between the insurance company and defendant because he had a legally protected interest in the insurance proceeds. It is true that FmHA subordinated their rights in the crops to plaintiff and that plaintiff had a security interest in the crops. From there, plaintiff asserts that pursuant to N.C. Gen. Stat. § 25-9-306(1) he also had an interest in and was entitled to participate in the distribution of the crop loss insurance proceeds. G.S. § 25-9-306(1) reads:

> "Proceeds" includes whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement.

N.C. Gen. Stat. § 25-9-306(1) (1986).

Authority for the above proposition is found, and relied upon by plaintiff, in *Zorba's Inn, Inc. v. Nationwide Mut. Fire Ins. Co.*, 93 N.C. App. 332, 377 S.E.2d 797 (1989) wherein this Court stated:

"Article 9 clearly gives the secured party a security interest in insurance proceeds which is enforceable against the debtor upon default. In other words, the secured party's interest in damaged or destroyed collateral continues in the insurance proceeds payable because of that damage or loss." *Zorba's*, 93 N.C. App. at 334-35, 377 S.E.2d at 799. That decision goes on to state however, that:

> If the secured party is not named as a loss payee or coinsured, or if the security agreement does not require the debtor to obtain insurance on the collateral for the benefit of the secured party, and there has been no assignment of rights to the insurance policy, then the secured party has no right, legal or equitable, enforceable against the insurer with respect to the proceeds of the policy.

*Zorba's*, 93 N.C. App. at 335, 377 S.E.2d at 799. Plaintiff was not named as loss payee or coinsured, nor was there an assignment to plaintiff of rights under the policy. The only question is whether the security agreement required defendant to obtain crop loss insurance.

The only mention of insurance in the security agreement is the following boilerplate language: "Debtor will have and maintain insurance at all times with respect to all collateral against risks of fire (including so-called extend coverage), theft and such *other risks as Secured Party my [sic] require* . . . ." (emphasis added). This language is the only evidence relied upon by plaintiff to establish a requirement that defendant obtain crop loss insurance under the security agreement. Plainly though, this does not establish an obligation that defendant obtain insurance on the crops when the agreement states that the debtor will maintain insurance against such risks "as Secured Party my [sic] require," and no action was ever demanded of defendant. Defendant took out insurance on the crops at the insistence of, and for the benefit of, FmHA. Therefore, plaintiff had no claim, legal or otherwise against the insurer and was not justified in interfering with the insurer's payment of the proceeds.

To the extent that the insurance proceeds may have exceeded the debt owed to FmHA, plaintiff was still not entitled to make a demand for payment of those proceeds until they fell into the hands of the defendant debtor. *Zorba's*, 93 N.C. App. at 335, 337 S.E.2d at 799. Accordingly, plaintiff's first argument fails.

LYON v. MAY

[108 N.C. App. 633 (1993)]

[2] Next, plaintiff argues that defendant did not possess a valid contractual right against the insurance company because he assigned the indemnity rights to FmHA, and therefore cannot claim interference with the contract. Although it is true that an assignment ordinarily passes the rights of the assignor to the assignee, that does not divest defendant of his cause of action in this case.

The transaction between defendant, FmHA, and the insurance company wherein the right to indemnity under the insurance policy was transferred to FmHA was labelled an assignment, but plainly this was not a complete assignment of rights in the sense plaintiff would have us see it. More accurately, the assignment was security for the loan made by FmHA to defendant, and FmHA's rights in the proceeds were limited to the amount of defendant's remaining indebtedness. To hold otherwise would be to ignore the reality of the transaction.

Defendant was the insured under the policy. Any check written as a result of a loss under the policy would be payable to both defendant and FmHA according to the testimony of the insurance company's agent. Being named as the insured under the policy, defendant unquestionably can maintain an action against the insurance company as the named insured. *Wachovia Bank & Trust Co. v. Currin*, 244 N.C. 102, 107, 92 S.E.2d 658, 662 (1956). Even though defendant's debt to FmHA exceeded the amount of the proceeds from the insurance company, that does not alter the fact that defendant had an enforceable right to force the payment of the proceeds. To hold otherwise would leave an insured with no recourse to the funds to which he is entitled in a case where the insurance company refuses to pay after an assignment has been made and the assignee/creditor chooses not to pursue the insurance proceeds.

[3] Plaintiff's second assignment of error involves the defendant's counterclaim for abuse of process. Plaintiff claims that there was insufficient evidence presented to establish the elements of abuse of process and he is therefore entitled to judgment notwithstanding the verdict.

The elements of abuse of process are (1) an ulterior motive in the use of process and (2) an act in the misuse of process after issuance to accomplish some purpose not warranted by the writ. *Stanback v. Stanback*, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979). In our opinion, the record does not reflect any evidence of an

ulterior motive on the part of plaintiff. There is no evidence that plaintiff tried to use the attachment for anything other than its real purpose—to prevent the transfer of money which plaintiff believed he was entitled, albeit mistakenly. Plaintiff was not entitled to attachment of the proceeds, but that does not change the fact that plaintiff used the attachment for its true purpose. Possibly an action for wrongful attachment fits these facts, but defendant chose not to use that theory.

Since defendant did not establish the elements of abuse of process, plaintiff was entitled to judgment notwithstanding the verdict on that issue.

**[4]** Finally, plaintiff assigns error to the trial court's denial of his motion for judgment notwithstanding the verdict on the issue of punitive damages. We have examined the record and find sufficient evidence to support the jury's verdict awarding punitive damages. Of course we limited our examination to evidence which is relevant to the claim of intentional interference with a contract since that is the only claim which remains and which will support an award of punitive damages.

**[5]** In his cross appeal, defendant assigns as error the granting of plaintiff's motion for judgment notwithstanding the verdict on the conversion counterclaim. Conversion is defined as the "unauthorized assumption and exercise of right of ownership over goods or personal property belonging to another to the alteration of their condition or the exclusion of the owner's rights." *Marina Food Assocs. v. Marina Restaurant Inc.*, 100 N.C. App. 82, 93, 394 S.E.2d 824, 831, *disc. review denied*, 327 N.C. 636, 399 S.E.2d 328 (1990). The act which defendant claims constitutes conversion is the changing by plaintiff of the name on a contract with the federal Agricultural Stabilization and Conservation Service (ASCS) signifying who would receive funds for the setting aside of a certain number of acres of plaintiff's land which was enrolled in the federal feed grain program.

The evidence presented at trial fails to establish ownership in defendant of the federal funds at the time of the alleged conversion, therefore the granting of plaintiff's motion for judgment notwithstanding the verdict was proper. Testimony of the director of the Greene County ASCS and one of his employees establishes that the paperwork for the feed grain program was signed by Mr. May on 1 April 1986, and on 24 April 1986 plaintiff signed

the contract and changed it to direct full payment of the funds to himself. In addition, the ASCS personnel presented uncontradicted testimony that a farmer has no right to participate in the feed grain program until the contract contains the signature of the land-owner. There was some testimony that seems to indicate that a farmer with a signed lease may enroll the farm in the program, but by defendant's own admission, he did not have a signed lease until 2 May 1986. Since defendant did not have the authority to enroll the farm in the program, he did not have an ownership interest in the funds until plaintiff authorized enrollment. As previously pointed out, the complained of act took place before plaintiff authorized enrollment and accordingly before defendant had any ownership interest in the funds. Therefore, plaintiff could not have unlawfully converted the ASCS funds at the time he altered the contract. Granting of judgment notwithstanding the verdict on this issue was proper.

In summary, the judgment of the trial court is affirmed in all respects except that the denial of plaintiff's motion for judgment notwithstanding the verdict on the abuse of process counterclaim is reversed. Upon remand the superior court should recalculate damages which may be necessary due to the decision in favor of plaintiff on the abuse of process issue.

Affirmed in part, reversed in part, and remanded.

Judges Johnson and Orr concur.