Suggs-Jacobs v. Physicians Weight Loss Ctr. of Am., Inc., 2003 NCBC 8

NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
00 CVS 7910

KELLY K. SUGGS JACOBS            )
and Persons Similarly Situated,       )
                                                      )
                        Plaintiff,          )
                                                      )
            v.                                      )
                                                      )
PHYSICIANS WEIGHT LOSS CENTER    )            ORDER AND OPINION
OF AMERICA, INC.,                      )
CHARLES E. SEKERES,              )
CECILE HOLDEN,                    )
JOHN D. SIDERIS,                   )
PAUL C. HUNT,                      )
JEAN THOMAS,                      )
COOKIE PARKER,                    )
G. A. PARKER,                      )
HEALTHY WEIGH, INC.,            )
P.C.H. TODAY, INC., and          )
VIRGINIA EVELYN DOREMUS,    )
                                                      )
                        Defendants.    )

{1}    This case arises out of plaintiff's challenge to certain business practices involving prescriptions for weight loss pharmaceuticals by Physicians Weight Loss Center of America ("PWLC") and its franchisees. The Plaintiff Class Representative Kelly Suggs-Jacobs ("Suggs-Jacobs") brought this action against defendants on her own behalf and on behalf of similarly situated class members based on several claims. Plaintiff alleges that defendants violated the North Carolina Unfair and Deceptive Trade Practices Act ("NC UDTPA"), committed intentional interference with a fiduciary relationship, committed constructive fraud, and violated the North Carolina Racketeer Influenced and Corrupt Organizations Act ("NC RICO Act"). This matter is before the Court on motions by plaintiff and defendants for summary judgment and defendants' motions to dismiss and to decertify the class.

{2}    After considering the briefs and oral arguments of both parties and for the reasons discussed below, the Court GRANTS defendants' motion for summary judgment in part and DENIES the motion in part. The Court DENIES plaintiff's motion for summary judgment. The Court GRANTS defendants' motion to dismiss as to the claims uncontested by plaintiff. The Court DENIES defendants' motion to decertify the class but notes that the summary judgment ruling necessitates redefining the class.

*Barron & Berry, L.L.P., by Frederick L. Berry; and Clark Bloss & Wall, PLLC, by John F. Bloss, for Plaintiffs.*

*Parker Poe Adams & Bernstein, by Harvey L. Cosper, Jr., John E. Krupp and Lori R. Keeton, for*

*Defendants Physicians Weight Loss Center of America, Inc., Charles E. Sekeres, Cecile Holden, John D. Sideris, Paul C. Hunt, Cookie Parker, G.A. Parker, Healthy Weigh, Inc., P.C.H. Today, Inc., and Virginia Evelyn Doremus.*

*Hill Evans Duncan Jordan & Davis, P.L.L.C. by Karl Hill, for Defendant Cecile Holden.*

FACTUAL BACKGROUND

**I.**

{3}     Defendant PWLC is an Ohio corporation doing business in North Carolina. PWLC provides services that include dietary and medicinal programs to enable the weight loss of its customers. PWLC maintains a franchise model in which individuals or entities purchase the rights to operate a branch in a specified geographic area. The franchisees market and sell the products and services of PWLC to individuals within a designated geographic area. Defendant Charles E. Sekeres is president of PWLC, the franchisor. Defendants Cecile Holden, John Sideris, Paul C. Hunt, Jean Thomas, Cookie Parker, G.A. Parker and Healthy Weigh, Inc. all own and operate various PWLC franchises in North Carolina.

{4}     PWLC has franchise operations in North Carolina located in Asheville, Greensboro, Jacksonville, Wilmington, and Winston-Salem. PWLC operations in these locations contract with physicians that examine and treat customers enrolled in weight loss programs. Physicians under contract with PWLC also provide prescription drugs to customers. The provision of prescriptions for those drugs is the key transaction from which this controversy arises.

{5}     Physicians at PWLC prescribed drugs, classified as Schedule IV controlled substances under N.C.G.S. § 90-92, in conjunction with the weight loss programs. For example, Class Representative, Suggs-Jacobs, entered into a contract at the Greensboro location for the System V Plus Meridia Plan. Under the contract, Suggs-Jacobs received a weight loss plan that included the medical services of a licensed physician. Her PWLC physician, Dr. Larry Weisner, prescribed a Schedule IV substance known as Meridia (sibutramine hydrochloride monohydrate) for Suggs-Jacobs.

{6}     Under plans like the System V Plus Meridia Plan, customers contracted to purchase weight loss drugs such as Meridia directly from PWLC at a set price as part of their contractual arrangement. The policy of PWLC was not to allow patients to have written prescriptions to fill at the pharmacy of their choice. The contract between PWLC and its doctors prohibited the physicians from providing prescriptions for outside use.

{7}     The customers paid the franchisees to have the prescriptions filled. Upon payment to the franchisees, PWLC faxed the prescription to the corporate offices and/or Colonial Pharmacy, both located in Ohio. Colonial Pharmacy then mailed the prescription drugs to the patient's residence, and franchisees transferred funds paid for the drugs to a PWLC account. PWLC then paid Colonial Pharmacy for filling the prescription. Because of the nature of the drugs and health problems of the customers, refill prescriptions were for short periods (two to four weeks) and were given only after the customers had seen the physician.

{8}     The cost of purchasing Meridia and similar weight loss drugs from PWLC was sometimes more than two times the price for the same drugs at an outside pharmacy. Suggs-Jacobs paid $115 for a two-week supply of Meridia. Suggs-Jacobs discovered that using a pharmacy instead of the PWLC service would provide her a substantial cost savings. Upon her discovery, Suggs-Jacobs requested that

a PWLC physician provide her with a prescription so that she could avail herself of the savings at a local pharmacy. The PWLC physician refused to provide the prescription, citing that his contract with PWLC prohibited writing prescriptions to external pharmacies. Suggs-Jacobs eventually quit the program and accepted a pro rata refund for six weeks of the System V Plus plan that she did not use. She did pay the PWLC price for Meridia for two weeks after the physicians refused to give her prescription to her.

{9}    Other customers, however, used the PWLC service to fill prescriptions via mail and did not request to use an outside pharmacy. These customers used the service provided by PWLC under the terms of the contract, without inquiry or dissent, albeit at a significantly higher price if the drug price <u>alone</u> is considered.

{10}    If a customer sought a prescription refill to be used at another pharmacy, he or she would have to go to a new physician to obtain a new prescription. There is no legal or medical ethical requirement that the PWLC physician continue to treat a patient who did not want to continue under their contract.

{11}    Superior Court Judge Melzer A. Morgan, Jr. certified this case as a class action on January 17, 2002. The class included all individuals who purchased prescription pharmaceuticals from any defendant from June 20, 1995 until January 17, 2002. The certification order included plaintiffs that did not request written prescriptions from PWLC for use at an outside pharmacy. Judge Morgan relied heavily on the case of *Pitts v. American Security Ins. Co.*, 144 N.C. App. 1, 550 S.E.2d 179 (2001), which the North Carolina Supreme Court subsequently ruled not to have any precedential value. 356 N.C. 292, 569 S.E.2d 647, *reconsideration denied*, 356 N.C. 439, 572 S.E.2d 161 (2002) (stripping of precedential value by Supreme Court because Court of Appeals' Opinion affirmed only by an even vote of the Justices).

{12}    The North Carolina Medical Board ("the Medical Board") filed a formal complaint against Dr. Larry Weisner, a physician under contract with PWLC, for his actions regarding the treatment of the class representative. The Medical Board charged Dr. Weisner with refusing to provide a prescription to a patient, assisting in the unauthorized practice of medicine, and illegal fee splitting. The Medical Board subsequently entered a Consent Order on April 7, 2003 in which Dr. Weisner admitted that he committed the alleged acts. In that proceeding the Medical Board determined that it was improper for Dr. Weisner to withhold Ms. Suggs-Jacobs' prescription from her. PWLC was not a party to the Medical Board proceeding.

## MOTION FOR SUMMARY JUDGMENT

### II.

{13}    Pursuant to Rule 56(c) of the North Carolina Rules of Civil Procedure, summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that any party is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56(c); *see Johnson v. Phoenix Mutual Life Ins. Co.,* 300 N.C. 247, 266 S.E.2d 610 (1980)*; Rose v. Guilford County*, 60 N.C. App. 170, 298 S.E.2d 200 (1982)*.* Partial summary judgment is appropriate in this case because the parties seek the Court's interpretation of the legal duties owed to the class by PWLC.

{14}    The purpose of summary judgment is to go beyond or to pierce the pleadings and determine whether a genuine issue of material fact exists. *See Singleton v. Stewart*, 280 N.C. 460, 186 S.E.2d

400 (1972). In the case at hand, the Court must evaluate the claims asserted by the class given the facts presented by the parties. The Court, however, must also determine, after applying the facts known at the summary judgment phase, whether issues of material fact exist that prevent the resolution of an issue as a matter of law.

## III.

{15}     First, the Court addresses plaintiff's claims that PWLC violated the Unfair and Deceptive Trade Practices Act under Chapter 75 of the North Carolina General Statutes. Plaintiff claims that PWLC impaired the physician-patient relationship, violated a fiduciary duty to customers, engaged in the illegal practice of both medicine and pharmacy, illegally restricted the patients' choice of a pharmacy, and illegally split fees with physicians. The crux of the claim is that PWLC should not have directed or permitted its physicians to withhold written prescriptions from its customers.

{16}     To the extent plaintiff's claim is read to assert that she paid too much for her prescriptions, defendants are entitled to summary judgment. The Unfair Trade Practices Act did not eliminate caveat emptor. *See Greenway v. North Carolina Farm Bureau Mut. Ins. Co.* , 35 N.C. App. 308, 313, 241 S.E.2d 339, 341 (1978). If there were other means to accomplish plaintiff's weight loss goals that were less expensive, it was not PWLC's obligation to point them out to the customer.

{17}     N.C. Gen. Stat. § 75-1.1 defines the elements necessary for a claim under the UDTPA as follows:
(a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.
(b) For the purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

{18}     The courts in North Carolina apply a three-prong test to determine violations of this section. The first two prongs of the test reiterate the required elements of an unfair or deceptive act that affects commerce. *See Furr v. Fonville Morisey Realty Inc.*, 130 N.C. App. 541, 551, 503 S.E.2d 401, 408 (1998). However, the third prong requires that the unfair act proximately cause an actual injury to the plaintiff. *Id.*; *see also Wysong & Miles Co. v. Employers of Wausau* , 4 F. Supp. 2d 421 (M.D.N.C. 1998); *Peterson v. Bozzano*, 183 Bankr. 735 (Bankr. M.D.N.C. 1995); *Owens v. Pepsi Bottling Co.* , 95 N.C. App. 47, 381 S.E.2d 819 (1989), *modified on other grounds*, 330 N.C. 666, 412 S.E.2d 636 (1992).

{19}     Under the first prong, a trade practice is unfair if the conduct "offends established public policy as well as when the practice is unmoral, unethical, oppressive, or unscrupulous." *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 NC 247, 263, 266 S.E.2d 610, 621 (1980). Determining the fairness of the conduct is a question of law, and the Court's analysis must examine the effects of the practice upon others. *Gray v. North Carolina Ins. Underwriting Ass'n* , 132 N.C. App. 63, 510 S.E.2d 396 (1999); *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 248 S.E.2d 739 (1978).

{20}     An analysis of the first prong that evaluates fairness, however, must not disregard the risks and freedom inherent in trade and commerce in our society. "Freedom of contract, unless contrary to public policy or prohibited by statute, is a fundamental right included in our constitutional guarantees." *American Tours, Inc. v. Liberty Mutual Insurance Co.,* 315 N.C. 341, 350, 338 S.E. 92, 98 (1986) (quoting *Muncie v. Travelers Ins. Co.* , 253 N.C. 74, 79, 116 S.E.2d 474, 478 (1960).

Plaintiff and PWLC had the right to enter into a contract to use the internal prescription service that carried a higher rate than an outside pharmacy would have charged. Parties are free to negotiate such contract terms as price and delivery so long as the provisions do not arise from an inequality of bargaining power. *See Miller Mut. Fire Ins. Ass'n v. Parker*, 234 N.C. 20, 22, 65 S.E.2d 340, 342 (1951). Plaintiff was free to enter into a contract that required the purchase of a weight loss drug through PWLC. Plaintiff's arguments do not support an absence of equality in bargaining power to render the agreement void and unenforceable.

{21}   The critical fact in this case is that contract physicians at the direction of PWLC refused to provide prescriptions to patients upon request. PWLC provided medical services through contract physicians. The actions of PWLC that prevented patients from obtaining requested prescriptions are unethical and contravene public policy. The Medical Board clearly demonstrated in the Consent Order that a physician violates an ethical duty by not providing a patient his prescription to use at the pharmacy of his choice.

{22}   The withholding of prescriptions by PWLC amounted to unethical conduct and contravened public policy, thus overriding the freedom of contract argument. The Medical Board found that Dr. Weisner's actions as a contract physician with PWLC were unethical. The unethical conduct of withholding prescriptions by Dr. Weisner was at the behest of PWLC. The PWLC policy was that physicians were not to give patients prescriptions to fill at outside pharmacies. The problem with the customer contract and the policy of withholding prescriptions taken together is that such practices mandated a physician practice — the refusal to provide a prescription — that violated medical ethics. The withholding of prescriptions, therefore, is unethical conduct and satisfies the fairness prong, as PWLC encouraged physicians to treat their patients in a manner that amounted to an unfair practice.

{23}   The claim against PWLC also meets the second prong requiring an unfair or deceptive act that affects commerce. Courts broadly interpret commerce under the UDTPA as a business activity of any kind limited only by express exemptions within the statute. *Bhatti v. Buckland*, 328 N.C. 240, 245-46, 400 S.E.2d 440, 443-44 (1991). The exchange of money for services to facilitate weight loss constitutes a business activity. No exemption applies, as none of defendants are physicians and are not protected by the learned profession exemption under the statute.

{24}   The basis for determining actual injury in a UDTPA case is an out of pocket loss suffered by the plaintiff. N. C. Unfair Business Practice 2d, § 9.1, p. 241; *see, e.g., Nell v. Anderson*, No. COA98-481 (N.C. App. June 1, 1999) at 10 (plaintiff's appeal of dismissed UDTPA claim failed because he could not project the difference between the value he paid for an automobile and the real value, thus he could not establish an actual injury). In this instance, weakness in plaintiff's UDTPA claim arises from inability of some plaintiffs to demonstrate an actual injury that satisfies the third prong.

{25}   Plaintiff asserts that PWLC injured the class by not providing prescriptions to patients to avail themselves of lower costs at other pharmacies. Some class members requested prescriptions to obtain the drugs less expensively at external pharmacies. PWLC's denial of these requests forced these customers to either use PWLC's pharmacy and pay a substantial markup over the retail price or terminate their contracts. Many class members, however, probably did not ask the physician for a prescription to use at an external pharmacy and thus accepted the terms to acquire the drugs from PWLC, as they were free to contract to do. It is not an unfair trade practice to charge a higher price than the lowest market price.

{26} Under UDTPA, plaintiffs must show a causal relationship between the violation and the injury from a claim. *See Lewis v. Archbell*, 199 N.C. 205, 154 S.E. 11 (1930); *Bennett v. Southern Ry*., 211 N.C. 474, 191 S.E. 240 (1937). Class members to whom PWLC denied requests for prescriptions paid an excessively high price for drugs that they sought to purchase elsewhere at a lower cost. PWLC arguably caused an economic injury to these plaintiffs. PWLC's refusal to provide prescriptions possibly caused these plaintiffs to pay the substantial difference between the price at PWLC and that of most pharmacies. PWLC unfairly limited the option of Class Members who found the higher price unacceptable and expressed their dissent to physicians by requesting a prescription for use elsewhere.

{27} Customers that accepted drugs from PWLC without protest or inquiry, however, assented to the terms of the contract as fair and reasonable. Customers that accepted the drugs under the terms of PWLC without requesting a prescription were not injured. The assenting customers suffered no economic loss because they accepted the excessive costs and did not manifest any intent to obtain a more reasonable price via alternative pharmacies. No actual injury occurred because these plaintiffs exercised the freedom to contract and paid the price without complaint. Those plaintiffs that did not request prescriptions for use elsewhere, therefore, suffered no out of pocket loss.

{28} The causal relation between a violation of the UDTPA and the injury alleged by the plaintiffs is an issue of fact for the jury. *Ellis v. Smith-Broadhurst, Inc*., 48 N.C. App. 180, 184, 48 S.E.2d 271, 273-74 (1981). In the case at hand, an injury occurred to plaintiffs that sought prescriptions from PWLC, as the refusal to provide such may have unfairly caused these customers to pay a higher price for the drug. The determination as to whether a causal relation existed between the withholding of requested prescriptions by PWLC and the higher drug costs incurred by plaintiffs is a question for the jury. These plaintiffs thus may have suffered actual injuries, and the defendants cannot prevail as a matter of law on these facts. The withholding of a written prescription by a treating physician at the direction of PWLC is an unfair trade practice if the requisite injury is shown.

{29} Those plaintiffs, however, that did not request prescriptions did not suffer an actual injury because they cannot allege an out of pocket loss for the unfair trade practice. Therefore, as a matter of law, since the consenting plaintiffs did not incur the requisite actual injury, the Court grants partial summary judgment for defendants as to the plaintiffs who did not request a written prescription.

## IV.

{30} The law regarding claims for intentional interference with a fiduciary relationship is not well developed. An intentional interference with contract claim, however, requires the plaintiff to suffer actual damages resulting from the defendant's actions. *Lyon v. May*, 108 N.C. App. 633, 637, 424 S.E.2d 655, 657 (1993) (citing *United Lab., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). The Court finds no reason that a claim involving intentional interference with a fiduciary relationship would not require the plaintiff to suffer resultant actual damages as well. The existence of a fiduciary relationship, therefore, does not matter in an intentional interference claim unless the plaintiff suffered damages.

{31} Thus the same analysis applies as in the UDTPA claim, in which plaintiffs must prove they suffered an out of pocket loss caused by PWLC's policy of not allowing prescriptions for outside use. *See supra* Part II. The Court, accordingly, does not find that PWLC interfered with the physician-patient relationship in every instance. If a plaintiff willingly accepted the prescription service from

PWLC without requesting a prescription to obtain pills from another provider, then PWLC did not interfere with the relationship.

{32}     If a plaintiff requested a prescription to obtain pills from another provider and the physician denied that claim, then such plaintiff has a valid claim against PWLC. The interference rests in PWLC preventing a physician from honoring the wishes of his patient to fill prescriptions elsewhere and thereby increasing the costs of the pills. The Medical Board found that Dr. Weisner's conduct was unethical. The customer contract with PWLC plus the policy prohibiting physicians from providing prescriptions combined to mandate the unethical conduct against the plaintiffs. To show interference, plaintiffs therefore must prove that a patient dissented, requested a prescription for use elsewhere and that PWLC caused the physician to deny that request. The denied request resulted in the inability of the patient to acquire the drugs at a lower price, resulting in the damages of an out of pocket loss.

{33}     With respect to the intentional interference with fiduciary relationship, the Court denies defendants' summary judgment as to plaintiffs that attempted to obtain prescriptions for use elsewhere and were denied that request by PWLC; however, the Court grants summary judgment for defendants as to plaintiffs that did not request prescriptions.

## V.

{34}     Plaintiffs also assert against PWLC causes of action for constructive fraud, violation of a fiduciary duty, and conversion. In North Carolina, a constructive fraud action requires two elements. First, there must be facts and circumstances that created a relationship of trust and confidence between the plaintiff and defendant. *Bowlin v. Duke University*, 108 N.C. App. 145, 151, 423 S.E.2d 320, 323 (1992). Second, the relationship must have resulted in a transaction in which the defendant took advantage of his position of trust to injure the plaintiff. *Id.*

{35}     The elements of constructive fraud require the Court to again turn to the issue of injury to plaintiff caused by PWLC. *Id.* A plaintiff did not incur an actual injury unless the patient requested, and a PWLC physician refused to provide, a prescription. A patient that entered into a contract to receive medicine at a higher price, not availing himself of cost savings of an outside pharmacy, assented to the terms offered by PWLC. The patient had the right to procure the medicine and the physician services at any cost that he chose so long as a disparity in bargaining power did not coerce his assent. *See American Tours, Inc.,* 315 N.C. at 350, 338 S.E. at 98; *Miller Mut. Fire Ins. Ass'n.* 234 N.C. at 22, 65 S.E.2d at 342. On the constructive fraud claim, the Court therefore grants summary judgment for defendants as to those plaintiffs that did not object to the prescription arrangement with PWLC and seek to obtain their written prescription.

{36}     A viable fiduciary relationship claim requires that the Court find that one of two types of relationships existed between PWLC and plaintiff. *See Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F.Supp.2d 540, 546 (M.D.N.C. 1999). The first type arises from traditional legal relations such as an attorney and client or a trustee and beneficiary. *Id.* (citing *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E.2d 896, 906 (1931)). The second type of relationship is based on a special confidence on the part of one party that enables the other party to exercise superiority or influence in the relationship. *Id.*

{37}     The interaction of PWLC and plaintiffs does not match the characteristics of the first type of relationship. PWLC provided weight loss services to its customers and legally was not in a position that required acting as fiduciary for the benefit of plaintiffs. The first type of relationship exists

because a party occupies a position that has a clearly defined fiduciary duty to the other party. The relationship of PWLC and the plaintiffs is clearly not analogous to that of a trustee and beneficiary because no traditional legal relationship exists in this instance.

{38} The second type of relationship is less well defined and requires a more in-depth examination of the relationship between PWLC and the plaintiffs. *See Bowlin*, 108 N.C. App. at 151, 423 S.E.2d at 323. A special confidence must exist for the Court to establish that this type of relationship was present. *Id.* Plaintiffs arguably granted a special confidence to the defendants by providing medical histories and submitting to medical testing by PWLC employees. The relationship between PWLC and plaintiffs possessed characteristics germane to a confidence beyond that found in a traditional contractual relationship.

{39} The second type of relationship, however, also requires a "resulting superiority and influence" to rise to the level of a fiduciary relationship. *Tin Originals, Inc. v. Colonial Tin Works*, Inc., 98 N.C. App. 663, 666, 391 S.E.2d 831, 833 (1990). Parties with equal bargaining power that deal at arm's length are not in a fiduciary relationship. *Id.* Plaintiffs entered into the contract in an arm's length transaction and had the opportunity to engage in a weight loss program elsewhere. PWLC has multiple and varied competition. Customers are free to go to their own physicians for diagnosis and treatment. In this arm's length transaction, defendants did not have a fiduciary relationship with the plaintiffs that accepted the medication at the price per their contract. Defendants, therefore, did not owe a fiduciary duty to the plaintiffs to provide the lowest cost alternative for medication.

{40} Defendants, however, exercised a resulting superiority and influence when they refused to provide any plaintiff requesting it with a prescription for external use. The plaintiffs provided medical background and submitted to tests amounting to a special confidence. Defendants' control over the prescriptions that plaintiffs requested placed PWLC in a superior position. The problem with the customer contract and the policy of withholding prescriptions taken together is that such practices mandated a practice that violated ethical standards at the expense of a party in an inferior position. Defendants' denial of the requested prescription removed the relationship from an arm's length transaction and allowed PWLC to exercise inappropriate influence.

{41} The Court grants defendants' motion for summary judgment on the breach of fiduciary duty claim as to plaintiffs that did not request the prescription. Defendants did not owe a fiduciary duty to those plaintiffs because no resulting superiority occurred if a plaintiff did not request a prescription. The Court, however, denies defendants' motion for summary judgment on the breach of fiduciary duty claim as to a plaintiff that requested a prescription. The control over the requested prescription placed PWLC in a superior position to abuse the special confidence gained through the medical records and tests.

{42} A conversion claim requires that the plaintiff have an interest in the property and that the defendant exercise unauthorized dominion over the property. *White v. White*, 76 N.C. App. 129, 331 S.E.2d 703, 704 (1985). Plaintiffs never had a property interest because PWLC defendants refused to provide written prescriptions to customers. Each plaintiff had no interest in which defendants could exercise unauthorized dominion. PWLC physicians simply refused to provide a prescription that medical ethics required be furnished. They did not convert the prescription to their own use. The Court, therefore, grants summary judgment for defendants as to the claim of conversion.

## VI.

{43}     Plaintiff contends that PWLC qualifies as a "health benefit plan" and is subject to North Carolina insurance law. N.C.G.S. § 58-51-37(a). The statute prohibits a health benefit plan from imposing a monetary advantage or penalty. N.C.G.S. § 58-51-37(a). Plaintiff asserts that actions of PWLC violated this statutory provision.

{44}     "[T]he purpose of Chapter 58 was to regulate *insurance rates* and Chapter 58 was not designed to regulate immoral, unethical, or oppressive behavior on the part of *insurance companies*." *United Virginia Bank v. Air-Lift Assoc.* , 70 N.C. App. 315, 320, 339 S.E.2d 90, 93 (2002) (emphasis added). Plaintiff wants the Court to find that PWLC is subject to a body of law that does not apply to the industry in question. PWLC assists customers with weight loss through dietary regimens, education, and medical support.

{45}     An insurance company is essentially an entity that assumes risk on behalf of the insured in exchange for premiums. Insurance companies wager that the total cost of services covered on behalf of the insured will not exceed the premiums paid by insured parties. PWLC assumed no risk on behalf of its customers in exchange for premiums. The PWLC customers paid flat fees for services to enable weight loss. PWLC, unlike a health maintenance organization or traditional health insurer, did not insure customers against any future costs incurred from health problems.

{46}     Chapter 58 pertains to insurance companies, and the activities undertaken by PWLC do not remotely resemble that of the insurance industry. The application of Chapter 58 to the conduct of PWLC is inappropriate given that intent of the statute is clearly to regulate insurance companies. Therefore, as a matter of law, since PWLC is not subject to Chapter 58, the Court grants summary judgment for defendants on those claims.


## VII.

{47}     Plaintiffs claim that PWLC violated the North Carolina Racketeer Influenced and Corrupt Organizations Act because the franchisees engaged in the sales of controlled substances, wire fraud and mail fraud. *See* N.C.G.S. § 75D-1, et. seq. A RICO claim requires that parties acted in concert or conspired to engage in fraudulent, illegal, or wrongful activities. In the case at the hand, plaintiffs would have to prove that both the franchisors and franchisees committed the aforementioned offenses and conspired to commit the offenses. N.C.G.S. § 75D-3(b).

{48}     Plaintiffs make no assertion that supports the occurrence of underlying illegal activities or conspiracy as required by the statute. *See id.* Plaintiffs also offer no facts to support claims that defendants engaged in the sale of controlled substances, mail fraud, wire fraud, or a conspiracy to commit these offenses. The Court, therefore, grants summary judgment for the defendants on the civil RICO claims.


## VIII.

{49}     Plaintiffs claim that PWLC violated N.C.G.S. § 90-406 that prohibits health care providers from referring patients to an entity in which the provider or member of the provider is an investor. N.C.G.S. § 90-407 specifically provides that the Attorney General of North Carolina is the party designated to recover civil penalties. The statute does not provide standing for a private party to bring an action

under § 90-406.

{50}   North Carolina law is clear as to when a statute provides for a private right of action. The Legislature, in most circumstances, must explicitly provide for a private right of action within the statute. *Lea v. Grier*, 156 N.C. App. 503, 508, 577 S.E.2d 411, 415 (2003); *Lane v. City of Kinston*, 142 N.C. App. 622, 628, 544 S.E.2d 810, 815 (2001); *Vanasek v. Duke Power Co.,* 132 N.C. App. 335, 339, 511 S.E.2d 41, 44 (1999). The statute makes no provision for a private right of action, evidenced by the conspicuous absence of any such language in § 90-407. The Court, therefore, grants defendant motion for summary judgment because as a matter of law plaintiff has no right to bring an illegal self-referral action.

## IX.

{51}   Plaintiffs assert that the PWLC violated the North Carolina Pharmacy Practice Act ("Pharmacy Act") because defendants did not have a license to operate a pharmacy. The Pharmacy Act defines the practice of pharmacy to include interpreting and evaluating drug orders; compounding, dispensing and labeling drugs; the storing of drugs and devices; and maintaining records and controlling pharmaceutical goods and services. N.C.G.S. § 90-85.3(r). No evidence demonstrates that PWLC or the franchisees engaged in any of the aforementioned activities.

{52}   The licensed pharmacist-physician that distributed the drugs to the PWLC customers was not an employee of the franchisor or franchisees. PWLC only faxed the prescription to the licensed pharmacist-physician to fill and distribute those orders to the patients. The licensed pharmacist-physician testified in his deposition that he neither sold nor delivered drugs to PWLC or the franchisees. Thus, PWLC did not conduct itself in any way that comports with activities of a pharmacy as described in the Pharmacy Act. Therefore, the Court denies plaintiff's motion for summary judgment as to the North Carolina Pharmacy Act claim.

## X.

{53}   Plaintiffs assert a claim under the theory of unjust enrichment. Unjust enrichment is a theory based upon the existence of an implied contract between parties. "It is a well-established principle that an express contract precludes an implied contract with reference to the same matter." *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713, 125 S.E.2d 905, 908 (1962); *see also Supply Co. v. Clark*, 247 N.C. 762, 764 102 S.E. 2d 257, 258 (1958). In the case at the hand, plaintiffs entered into express contracts that clearly outline the terms of the prescription services. The Court cannot imply a contract between PWLC and plaintiffs when a contract exists that expressly addresses the matter in question. *See* N.C.G.S. § 90-85.3(r). Therefore, the Court grants defendants' motion for summary judgment as to the unjust enrichment claim.

## MOTION TO DECERTIFY THE CLASS

## XI.

{54}   Defendants argue that the Court should overrule the order certifying the class entered by Superior Court Judge Melzer A. Morgan on January 18, 2002. The decertification of Judge Morgan's order requires one superior court judge to overrule the order of another superior court judge. "One superior court judge may only modify, overrule, or change the order of another superior court judge where the

original order was (1) interlocutory, (2) discretionary, and (3) there has been a substantial change in circumstances since the entry of the prior order." *First Financial Ins. Co. v. Commercial Coverage, Inc.,* 154 N.C. App. 504, 507, 572 S.E.2d 259, 262 (2002); *Stone v. Martin*, 69 N.C. App. 650, 652, 318 S.E.2d 108, 110 (1984). Defendants assert that since Judge Morgan entered his order, a substantial change in circumstances occurred when the North Carolina Supreme Court stripped the case of precedential value that provided the basis for class certification. *Pitts v. American Security Ins. Co.*, 356 N.C. 292, 569 S.E.2d 647, *reconsideration denied*, 356 N.C. 439, 572 S.E.2d 161 (2002) (stripping of precedential value by Supreme Court because Court of Appeals' Opinion affirmed only by an even vote of the Justices).

{55}   This Court addressed in a previous case similar concerns about overruling the class certification order of another judge. *See generally Ruff v. Parex*, 1999 NCBC 6 (No. 96 CVS 0059, New Hanover Super. Ct. June 17, 1999) (Tennille, J.) (addressing the discretion of a trial judge to overrule the prior certification order of another trial judge). In *Ruff*, this Court extrapolated three principles from precedent that addressed the review of certification order by another trial judge. *Id.* (citing *Dublin v. UCR, Inc.*, 115 N.C. App. 209, 444 S.E.2d 455 (1994)). First, certification orders are interlocutory. *Ruff*, 1999 NCBC 6 (citing *Faulkenbury v. Teachers and State Employees; Retirement Sys.*, 108 N.C. App. 357, 424 S.E.2d 420 (1993)). Second, because certification orders are interlocutory they may be modified when a substantial change in circumstances occurs. *Ruff*, 1999 NCBC 6 (citing *Calloway v. Ford Motor Co.*, 281 N.C. 496, 189 (1972)). Third, the "substantial change in circumstances" must relate to the legal foundation or basis of the original certification order to prevent changing a class without sound reasoning. *Id.*

{56}   The Court must determine if a change in the precedential value of *Pitts* amounts to a substantial change in circumstances. *Id.* Therefore, the Court considers whether the Court of Appeals opinion in *Pitts* relates to the legal basis of the original certification order. There are circumstances under which the Supreme Court's elimination of the precedential value of *Pitts* could provide grounds for review of a class certification order. The Court, however, need not reach that issue here. The Court's ruling on summary judgment has redefined the class. The refined class has common issues of fact and law and meets all of the criteria for class certification with one exception. The Court has no basis for making a determination of numerosity. There is no record of how many customers requested written prescriptions and were denied them. The Court will permit plaintiff to conduct additional discovery and file supplemental pleadings to satisfy the numerosity requirement.

{57}   The summary judgment order alters the class by limiting it to those plaintiffs who did request prescriptions for use at other pharmacies. Plaintiffs that did not request prescriptions for use elsewhere and to whom PWLC did not refuse such requests do not have claims as a matter of law. See *supra* Parts II-IV. Thus, the class definition has been modified to consist of a class of plaintiffs who were denied their written prescriptions when requested. The modification results from the summary judgment ruling.

### MOTION TO DISMISS

{58}   Plaintiffs do not contest the motion to dismiss the claim under N.C.G.S. § 90-95 (a)(1) or the actual fraud cause of action. The Court, therefore, grants the defendants' motion to dismiss both claims.

# CONCLUSION

{59}    Plaintiffs have not sought injunctive relief in this case. Accordingly, the Court has not entered any order restricting PWLC operations. It should be clear, however, from both this opinion and the Consent Order of the Medical Board in the Weisner case that continuation of a policy or contractual provision which requires physicians to violate their medical ethics will not be legally sanctioned. While neither PWLC nor its physicians can be compelled to provide medical care to PWLC customers, they may not withhold a written prescription so long as the physician is treating the patient. To do so is an unfair trade practice if the customer sustains injury. The nature and extent of that injury is a fact dispute that is unresolved at this stage.

{60}    Customers seeking weight loss programs have an expansive menu from which to choose. PWLC offered one choice. PWLC's customers were not told that it was the cheapest way to lose weight or that it was less expensive than seeing a primary care physician and purchasing the drugs at a retail pharmacy. Those customers chose the program knowing what they contracted to purchase. If they chose to change programs, they were free to do so. Having provided a medical examination and prescription, PWLC and their treating physicians could not withhold the written prescription from the patient/customer.

{61}    Based upon the foregoing, it is hereby Ordered, Adjudged and Decreed:

1.   Summary judgment in favor of defendants is GRANTED on the first and third causes of action as to plaintiffs that did not suffer an actual injury;

2.   Summary judgment in favor of defendants is DENIED on the first and third causes of action as to plaintiffs that suffered an actual injury;

3.   Summary judgment in favor of defendants is GRANTED on the fourth cause of action, except conversion, as to plaintiffs to whom PWLC did not deny requests for prescriptions;

4.   Summary judgment in favor of defendants is DENIED on the fourth cause of action, except conversion, as to plaintiffs to whom PWLC refused requests for prescriptions;

5.   Summary judgment in favor of defendants is GRANTED on the conversion cause of action;

6.   Summary judgment for defendants is GRANTED on the second, eighth, ninth, tenth and twelfth causes of action;

7.   Summary judgment in favor of the plaintiff is DENIED;

8.   Defendants' uncontested motions to dismiss on the fifth and sixth causes of action are GRANTED;

9.   Defendants' motion to decertify the class is DENIED;

10. The class definition is modified to consist only of plaintiffs who were denied their written prescriptions when requested; and

11. Plaintiff has sixty (60) days to conduct further discovery and file a supplemental pleading with the Court as to the numerosity requirement.

{62}    SO ORDERED this the _____ day of November 2003.